1
2
3
4
5
6                  UNITED STATES DISTRICT COURT
7                 WESTERN DISTRICT OF WASHINGTON
                            AT SEATTLE

8  PINHAS BARAK,
9                    Plaintiff,              Case No. C20-5094-BHS-SKV
10        v.                                 REPORT AND RECOMMENDATION
11  STATE OF WASHINGTON et al.,
12                    Defendant.
13

14              I.      INTRODUCTION

15        This is a 42 U.S.C. § 1983 case brought by Plaintiff Pinhas Barak against Defendants

16  Zachary Bloomfield, the State of Washington, and the Washington State Patrol ("WSP") for

17  alleged violations of Plaintiff's First Amendment Rights.  This matter comes before the Court on

18  Defendants' Motion for Summary Judgment.  Having thoroughly considered the briefing and the

19  relevant record, the Court finds that Defendants' Motion, Dkt. 17, should be GRANTED for the

20  reasons stated herein.[1]

21        / / /

22
_____

23        [1] Plaintiff's opposition to Defendants' Motion was untimely filed, *see* Dkt. 23, and Defendants
    oppose the Court's consideration of it.  *See* Dkt. 24.  Further, as a result of Plaintiff's untimely submission,
    Defendants' reply was untimely.  *See* Dkt. 25.  In the interest of justice, the Court considers Plaintiff's
    opposition, as well as Defendants' untimely reply, in ruling on the Motion.

1

2    II.    <u>BACKGROUND</u>

3    The material facts are not in dispute.  On August 17, 2018, Plaintiff was traveling

4    northbound on Interstate 5 near milepost 133 in Washington State.  Dkt. 1 ¶ 4.3; *see generally*

5    Dkt. 18 ¶ 4, Ex. B (hereinafter "Dashcam Video").[2]  Plaintiff was operating a silver and black

6    2018 BMW model motorcycle, licensed and registered in California.  Dkt. 1 ¶ 4.3; Dkt. 18 ¶ 3,

7    Ex. A (hereinafter "Police Report") at 6, 13.  Plaintiff's motorcycle was equipped with

8    aftermarket white strobe lights and four gold and black stickers measuring approximately two

9    inches by two inches, each in the shape of a shield.  Dkt. 1 ¶ 4.3; Police Report at 6, 10; *see also*

10    Dashcam Video at 09:22–09:48.  The shield stickers depicted the same emblem within white and

11    black checkering and the words "CIGAR-BIKER" and "Los Angeles, USA" were written

12    beneath the emblem.  Dkt. 1 ¶ 4.3; Police Report at 6, 10; *see also* Dashcam Video at 09:22–

13    09:48.  One sticker was located on each of the motorcycle's two rearview mirrors, one was

14    located on the back of the motorcycle's saddle area, and one was located on the motorcycle's

15    rear storage box.  Dkt. 1 ¶ 4.3; Police Report at 6, 9, 12; *see also* Dashcam Video at 09:22–

16    09:48.  Plaintiff was wearing a white helmet with a clear face shield, a dark brown leather jacket

17    and dark brown boots, light brown pants, black leather gloves, and black aviator sunglasses.

18    Dkt. 1 ¶ 4.3; Dashcam Video at 03:00–03:10, 07:52.  Further, Plaintiff's helmet displayed two of

19    the same shield stickers, one on the top of the helmet and the other on the part of the helmet

20    covering Plaintiff's lower jaw.  Dkt. 1 ¶ 4.3; Dashcam Video at 02:15 (view from the back of

21    Plaintiff's helmet); Police Report at 14–15 (pictures of the front and sides of Plaintiff's helmet).

22

23    [2] Defendant Bloomfield's dashcam captured the traffic stop at issue in this case.  When citing to the Dashcam Video herein, the Court refers to the time at which each event begins on the Video, without reference to the event's end time. The citation format of 00:00 represents the time elapsed from the start of the Video in minutes and seconds.

REPORT AND RECOMMENDATION - 2

1    Defendant Bloomfield, a trooper with the WSP, observed Plaintiff riding his motorcycle

2    with the white strobe lights flashing between lanes one and two of northbound Interstate 5.  Dkt.

3    1 ¶¶ 4.4–4.5; Police Report at 6.  Defendant Bloomfield initially thought Plaintiff was an "officer

4    from another agency" who "was attempting to get through traffic that was driving slower than

5    the posted speed limit."  Police Report at 6; *see also* Dkt. 1 ¶ 4.5.  As Plaintiff approached

6    Defendant Bloomfield's location, however, Defendant Bloomfield "realized that it was not a

7    police officer and was just a citizen with badges and multiple flashing lights on his motorcycle."

8    Police Report at 6; *see also* Dashcam Video at 12:45–14:00.  Defendant Bloomfield then pulled

9    over Plaintiff.  Dkt. 1 ¶ 4.5; Police Report at 6; Dashcam Video at 01:12–02:08.

10    Defendant Bloomfield notified Plaintiff that he had stopped him for lane splitting and

11    impersonating a police officer.  Dkt. 1 ¶ 4.6; Police Report at 6; Dashcam Video at 02:28–02:33,

12    04:18–04:40.  He then asked Plaintiff "about the golden badge stickers that he had placed on

13    each rear view mirror, on each side of the gas tank, on the side of each saddle bag, on the rear of

14    his motorcycle above an after-market light bar, front helmet under the visor, and back of the

15    helmet."  Police Report at 6; *see also* Dkt. 1 ¶ 4.6; Dashcam Video at 04:18–04:40, 08:17–08:21.

16    Plaintiff stated that "other motorcycles have gangs and this was his little joke to them."  Police

17    Report at 6; *see also* Dkt. 1 ¶ 4.6; Dashcam Video at 08:22–08:49.  Defendant Bloomfield

18    informed Plaintiff that his use of flashing lights was illegal, Dashcam Video at 02:28–02:33, to

19    which Plaintiff responded that the Department of Transportation had approved the lights.  Dkt. 1

20    ¶ 4.6; Dashcam Video at 02:40–02:54.  Defendant Bloomfield also informed Plaintiff that he was

21    riding the same brand and type of motorcycle that the WSP rides.  Police Report at 6; Dashcam

22    Video at 05:11–05:22.  Further, Plaintiff's "helmet was a white full-face helmet with the same

23

1    gold police badge shaped stickers on the front and back, in the same location that police place

2    their markings on their helmets."  Police Report at 6; *see also* Dashcam Video at 12:45–14:42.

3            Defendant Bloomfield issued Plaintiff a citation for lane splitting and informed Plaintiff

4    that he would be forwarding the charge of Criminal Impersonation in the Second Degree to the

5    Pierce County Prosecutor's Office.  Police Report at 6; Dashcam Video at 25:32–26:41.  He also

6    required Plaintiff to remove the shield stickers before leaving the traffic stop and to deactivate

7    the flashing white strobe lights on the front of his bike.  Dkt. 1 ¶ 4.6; Police Report at 6;

8    Dashcam Video at 09:58–10:11, 25:03–25:25.  The Pierce County Prosecutor's Office

9    subsequently prosecuted Plaintiff for Criminal Impersonation in the Second Degree.  Dkt. 1 ¶

10   4.7; Dkt. 19 ¶ 2, Ex. A (hereinafter "Diversion Agreement").  Plaintiff ultimately entered into a

11   two-year pretrial diversion agreement on the charge.  *See generally* Diversion Agreement.

12           In March 2020, Plaintiff filed suit against all Defendants under 42 U.S.C. § 1983,

13   alleging he was unlawfully detained and arrested in violation of his First Amendment rights.

14   Dkt. 1 ¶¶ 6.1–6.3.  He also brought suit under § 1983 against the State of Washington and the

15   WSP for having policies, practices, and customs that allegedly violate the First Amendment.[3]  *Id.*

16   at ¶¶ 7.1–7.4.  Plaintiff's lawsuit is predicated on Defendant Bloomfield taking adverse action

17   against him for displaying shield-like stickers on his motorcycle and helmet.  *See id.* at ¶¶ 4.6–

18   4.7.  He seeks compensatory and punitive damages, injunctive relief, and attorneys' fees.  *Id.* at

19   ¶¶ 8.1–8.5.  Defendants now move for summary judgment on Plaintiff's claims.

20           / / /

21           / / /

22

23           [3] Defendants have moved on summary judgment to dismiss Plaintiff's claims against the State of
     Washington and the WSP, Dkt. 17 at 6–8, and Plaintiff does not oppose their Motion.  *See* Dkt. 23 at 4.  As
     such, Plaintiff's claims against both should be dismissed with prejudice.  This Report and Recommendation
     addresses Plaintiff's remaining First Amendment claim against Defendant Bloomfield.

1

III.    <u>DISCUSSION</u>

2    A.    <u>Legal Standard</u>

3    Summary judgment is appropriate where "the movant shows that there is no genuine

4 dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

5 R. Civ. P. 56(a).  Material facts are those which might affect the outcome of the suit under

6 governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In ruling on

7 summary judgment, a court does not weigh evidence to determine the truth of the matter, but

8 "only determine[s] whether there is a genuine issue for trial."  *Crane v. Conoco, Inc.*, 41 F.3d

9 547, 549 (9th Cir. 1994) (citation omitted).

10    The non-moving party must present significant and probative evidence to support its

11 claims or defenses.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th

12 Cir. 1991) (citation omitted).  "The mere existence of a scintilla of evidence in support of the

13 [non-moving party's] position will be insufficient; there must be evidence on which the jury

14 could reasonably find for the [non-moving party]."  *Anderson*, 477 U.S. at 251.

15    On summary judgment, the Court views the evidence in the light most favorable to the

16 non-moving party.  *Anderson*, 477 U.S. at 255.  That being said, when video evidence is part of

17 the record and there are no allegations or indications that the video was doctored or altered, nor

18 any contention that what the video depicts differs from what actually happened, the Court should

19 view the facts "in the light depicted by the videotape."  *Scott v. Harris*, 550 U.S. 372, 378, 380–

20 81 (2007).

21    B.    <u>Qualified Immunity</u>

22    On summary judgment, Defendants move to dismiss Plaintiff's § 1983 claim against

23 Defendant Bloomfield, arguing Defendant Bloomfield is entitled to qualified immunity.

REPORT AND RECOMMENDATION - 5

1    Public officials are immune from suit under § 1983 unless they have "violated a statutory

2    or constitutional right that was clearly established at the time of the challenged conduct." *City &*

3    *Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 611 (2015) (citation omitted).  An officer

4    cannot be said to have violated a clearly established right "unless the right's contours were

5    sufficiently definite that any reasonable official in [the officer's] shoes would have understood

6    that [the officer] was violating it," meaning existing precedent "placed the statutory or

7    constitutional question beyond debate." *Id.* (citation omitted).  This exacting standard "gives

8    government officials breathing room to make reasonable but mistaken judgments" by protecting

9    "all but the plainly incompetent or those who knowingly violate the law." *Id.* (citation omitted).

10    Determining whether an officer is entitled to qualified immunity requires the Court to

11    analyze two factors: (1) "whether the facts that a plaintiff has . . . shown . . . make out a violation

12    of a constitutional right"; and (2) "whether the right at issue was 'clearly established' at the time

13    of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (citations omitted).

14    If the answer to either question is "no," then the officer-defendant is entitled to qualified

15    immunity.  *See id.*  Courts are permitted to decide "which of the two prongs of the qualified

16    immunity analysis should be addressed first in light of the circumstances in the particular case at

17    hand." *Id.* at 236.

18        1.    *Whether the facts that Plaintiff has shown make out a violation of a constitutional*
                *right*
19

20    By alleging Defendants "unlawfully detained and arrested" Plaintiff in violation of his

21    First Amendment rights, Dkt. 1 ¶ 6.2, Plaintiff's Complaint appears to state a First Amendment

22    retaliation claim, and the parties construe Plaintiff's claim as such on summary judgment.  *See*

23    Dkt. 17 at 10; Dkt. 23 at 6.  ""[A]s a general matter the First Amendment prohibits government

officials from subjecting an individual to retaliatory actions' for engaging in protected speech."

1    *Nieves v. Bartlett*, 139 S.Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256

2    (2006)). "To state a First Amendment retaliation claim, a plaintiff must plausibly allege 'that (1)

3    he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a

4    person of ordinary firmness from continuing to engage in the protected activity[,] and (3) the

5    protected activity was a substantial or motivating factor in the defendant's conduct.'" *Capp v.*

6    *County of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (quoting *O'Brien v. Welty*, 818 F.3d

7    920, 932 (9th Cir. 2016)).

8           "It is not enough to show that an official acted with a retaliatory motive and that the

9    plaintiff was injured—the motive must cause the injury." *Nieves*, 139 S.Ct. at 1722.

10   "Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff

11   would not have been taken absent the retaliatory motive." *Id*. (citing *Hartman*, 547 U.S. at 260);

12   *Lozman v. City of Riviera Beach, Fla.*, 138 S.Ct. 1945, 1952 (2018) (". . . even if retaliation

13   might have been a substantial motive for the [adverse] action, still there was no liability unless

14   the alleged constitutional violation was a but-for cause" of the action).  When a plaintiff alleges

15   retaliatory arrest, as Plaintiff does here, the absence of probable cause for the arrest "generally

16   provide[s] weighty evidence that the officer's animus caused the arrest, whereas the presence of

17   probable cause will suggest the opposite." *Nieves*, 139 S.Ct. at 1724.  Thus, a plaintiff alleging

18   retaliatory arrest must generally plead and prove the absence of probable cause.  *Id*. at 1723–24.

19   Alternatively, however, a plaintiff may "present objective evidence that he was arrested when

20   otherwise similarly situated individuals not engaged in the same sort of protected speech had not

21   been." *Id*. at 1727.

22          Defendants argue Plaintiff cannot establish a First Amendment retaliation claim because

23   he cannot demonstrate that he was engaged in constitutionally protected activity when he was

1    stopped by Defendant Bloomfield and cannot show that his allegedly protected activity was a

2    substantial or motivating factor in Defendant Bloomfield's conduct.  Dkt. 17 at 10.  According to

3    Defendants, while stickers generally qualify as protected symbolic speech under the First

4    Amendment, "the use of stickers to impersonate a police officer" is the type of "false speech"

5    that is not constitutionally protected.  *Id.* at 10–11.  Defendants further contend that because

6    Defendant Bloomfield had probable cause to believe Plaintiff was impersonating a police officer

7    in violation of the law, Plaintiff cannot establish that his allegedly protected activity—displaying

8    the stickers—caused Defendant Bloomfield's actions.  *Id.* at 11–13.  Plaintiff, on the other hand,

9    contends that the stickers "were clearly a joke" and are therefore protected as "humor, satire,

10   [and] falsity" under the First Amendment.  Dkt 23 at 5.  He further contends that because there

11   was no probable cause for his arrest "absent the stickers," his "claim can survive."  *Id.* at 6–9.

12          With regards to whether Plaintiff was engaged in a constitutionally protected activity, the

13   U.S. Supreme Court has held that while certain types of false speech are afforded First

14   Amendment protection, statutes that prohibit people from falsely representing that they are

15   speaking on behalf of the government or from impersonating a government officer do not run

16   afoul of the First Amendment.  *See United States v. Alvarez*, 567 U.S. 709, 721 (2012); *see also*

17   *United States v. Tomsha-Miguel*, 766 F.3d 1041, 1048 (9th Cir. 2014) (citation omitted)

18   ("[S]tatutes that prohibit false speech in order to 'protect the integrity of Government processes'

19   and 'maintain the general good repute and dignity of government service itself,' . . . [are]

20   permissible restrictions on free speech.").  Under Washington law, a person is guilty of Criminal

21   Impersonation in the Second Degree if (in relevant part) the person creates an impression that he

22   or she is a law enforcement officer, does an act with the intent to convey that he or she is a law

23   enforcement officer, and a reasonable person would believe that he or she is a law enforcement

1    officer.  RCW 9A.60.045.  On its face, this law appears to prohibit people from impersonating

2    government officers—i.e., police officers—so is a permissible restriction on false speech under

3    the First Amendment.  Plaintiff does not contend otherwise.  The question, then, is whether

4    Plaintiff displaying the stickers violated this law such that his speech activity is not protected by

5    the First Amendment.  The Court need not decide the question, however, because regardless of

6    whether Plaintiff's conduct violated the law, Defendant Bloomfield had probable cause for

7    believing it did.  Given this, Plaintiff cannot establish that retaliation motivated Defendant

8    Bloomfield's actions.[4]

9         Probable cause to make an arrest exists when, at the moment of the arrest, the facts and

10   circumstances within the arresting officer's knowledge are sufficient to warrant a prudent man's

11   belief that the arrested person has committed or was committing an offense.[5]  *Beck v. Ohio,* 379

12   U.S. 89, 91 (1964) (citations omitted); *see also Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1076

13   (9th Cir. 2011) (citation omitted) ("An officer has probable cause to make a warrantless arrest

14   when the facts and circumstances within his knowledge are sufficient for a reasonably prudent

15

16         [4] While Plaintiff's Complaint alleges Defendant Bloomfield "ordered [him] to remove all of the 'CIGAR BIKER' stickers from his motorcycle and his helmet," Dkt. 1 ¶ 4.6, Plaintiff brings a claim only for unlawful detention and arrest, and not for alleged First Amendment violations stemming from this forced removal.  *See id.* ¶¶ 6.1–6.3.  As such, the Court considers only Defendant Bloomfield's decision to stop Plaintiff and refer impersonation charges against him to the Pierce County Prosecutor's Office when analyzing Plaintiff's First Amendment retaliation claim, not his decision to require Plaintiff to remove the stickers.

19         [5] The parties disagree over whether Defendant Bloomfield actually arrested Plaintiff.  *Compare* Dkt. 17 at 12, *with* Dkt. 1 ¶ 6.2.  Because Defendants contend that he did not, their Motion addresses whether Defendant Bloomfield had "reasonable suspicion" to stop Plaintiff for impersonating a police officer, as opposed to whether he had probable cause for doing so.  *See* Dkt. 17 at 12.  In order for an officer to temporarily detain (but not arrest) a defendant, the officer must have reasonable suspicion—or "a particularized and objective basis"—for suspecting the defendant has committed criminal activity.  *See Fla. v. Royer*, 460 U.S. 491, 499–500 (1983); *United States v. Cortez*, 449 U.S. 411, 417–18 (1981).  Reasonable suspicion is a less exacting standard than probable cause.  *United States v. Sokolow*, 490 U.S. 1, 7 (1989).  This means that if Defendant Bloomfield had probable cause for believing Plaintiff was unlawfully impersonating a police officer, he also had reasonable suspicion for believing he was.  Therefore, the Court applies the more exacting probable cause standard herein.

1   person to believe that the suspect has committed a crime.")).  Probable cause requires "the kind

2   of fair probability on which reasonable and prudent people, not legal technicians, act."  *Fla. v.*

3   *Harris*, 568 U.S. 237, 244 (2013) (cleaned up).  In evaluating whether the State has met this

4   "practical and common-sensical standard," courts look to the "totality of the circumstances" and

5   reject "rigid rules, bright-line tests, and mechanistic inquiries" in favor of a "more flexible, all-

6   things-considered approach."  *Id.*  The ultimate conclusion of whether probable cause exists is a

7   mixed question of law and fact, *United States v. Pinion,* 800 F.2d 976, 979 (9th Cir. 1986)

8   (citations omitted), the resolution of which is appropriate on summary judgment if reasonable

9   minds could not differ.  *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976); *In re*

10   *Syntex Corp. Securities Litigation*, 95 F.3d 922, 926 (9th Cir. 1996).

11       Here, the facts and circumstances within Defendant Bloomfield's knowledge were

12   sufficient to warrant a reasonable man's belief that Plaintiff was committing the offense of

13   impersonating a police officer.  Plaintiff was riding a silver and black BMW motorcycle—the

14   same manufacturer as at least some of the motorcycles ridden by the WSP.[6]  Police Report at 6;

15   Dashcam Video at 05:11–05:22.  He was driving between lanes of traffic and flashing his

16   motorcycle's white strobe lights.  Police Report at 6.  Further, he was wearing a white helmet,

17   brown leather jacket, brown boots and pants, black leather gloves, and black aviators, which

18   together resembled police attire.  Dashcam Video at 03:00–03:10, 07:52.  Finally, Plaintiff's

19   helmet and motorcycle displayed several stickers resembling law enforcement shields, and the

20   shields on his helmet were placed in the same location as the markings on WSP helmets.  Police

21   Report at 6.  His appearance and conduct were therefore reminiscent of a police officer

22

23       [6] Plaintiff argues that the motorcycle was not the same model as the BMW motorcycles used by the WSP.  Dkt 23 at 8.  This is insufficient to overcome the fact that the overall appearance of his motorcycle was reminiscent of a WSP motorcycle, *see* Dashcam Video at 12:45–14:42, and the fact that the totality of the circumstances indicated Plaintiff was impersonating a police officer.

REPORT AND RECOMMENDATION - 10

attempting to move through traffic that was driving slowly.  These facts, taken together, are sufficient to establish probable cause.

Citing *Nieves*, Plaintiff argues that whether Defendant Bloomfield had probable cause must be evaluated without consideration of the stickers. Dkt. 23 at 6.  *Nieves* does not support such a conclusion.  Instead, *Nieves* provides that the protected speech at issue "is often a wholly legitimate consideration for officers when deciding whether to make an arrest." *Nieves*, 139 S.Ct. at 1723–24 (cleaned up).  That is the case here.  Further, this position ignores the fact that evaluating probable cause requires courts to look to the totality of the circumstances. *Harris,* 568 U.S. at 244.  Here, the totality of the circumstances indicate that Defendant Bloomfield had probable cause for believing Plaintiff was impersonating a police officer.  And because Plaintiff has not come forth with any evidence indicating he was arrested for criminally impersonating a police officer "when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been," *Nieves*, 139 S.Ct. at 1727, he has not demonstrated that retaliation motivated Defendant Bloomfield's actions.  As such, he has failed to make out a violation of a constitutional right, and his claim fails.

2.    *Whether the constitutional right at issue was "clearly established" at the time of Defendants' alleged misconduct*

Even if Plaintiff had made out a violation of his First Amendment rights, his retaliation claim would still fail on qualified immunity grounds because he has not demonstrated that the right at issue was "clearly established" at the time of Defendant Bloomfield's alleged misconduct.

As indicated, "clearly established" means that existing law placed the constitutionality of the officer's conduct "beyond debate." *Sheehan*, 575 U.S. at 611 (citation omitted).  Applying this standard, the Supreme Court has emphasized that courts may not "define clearly established

1    law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (citation

2    omitted). Instead, the clearly established right at issue must be defined with specificity, *id.*,

3    meaning "a controlling case must 'squarely govern[] the specific facts at issue,' except in the

4    'rare obvious case' in which a general legal principle makes the unlawfulness of the officer's

5    conduct clear despite a lack of precedent addressing similar circumstances." *West v. City of*

6    *Caldwell*, 931 F.3d 978, 982–83 (9th Cir. 2019) (quoting *City of Escondido v. Emmons*, 139 S.

7    Ct. 500, 503–04 (2019)). Whether a law was "clearly established" is a question of law "that only

8    a judge can decide." *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017).

9        Here, Plaintiff has not identified any precedent that "clearly establishes" that, by stopping

10   his motorcycle and citing him for lane splitting and unlawful impersonation of a police officer,

11   Defendant Bloomfield violated his First Amendment rights. His First Amendment retaliation

12   claim is therefore barred by qualified immunity.

13                                    IV.    <u>CONCLUSION</u>

14       For the foregoing reasons, Defendant's Motion, Dkt. 17, should be GRANTED. A

15   proposed order accompanies this Report and Recommendation.

16       / / /

17       / / /

18       / / /

19       / / /

20       / / /

21       / / /

22       / / /

23       / / /

V.    OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **October 29, 2021**.

Dated this 13th day of October, 2021.

S. KATE VAUGHAN
United States Magistrate Judge